90/08-5838.DW

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN COLT LANDRETH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| KEITH R. LEIGH, POOL, LEIGH & KOPKO, | ) NO. 08 C 01654 |
| P.C. (formerly known as POOL & LEIGH, | ) |
| P.C.), an Illinois Professional Corporation, | ) |
| ROBERT M. ESCHBACH, and THE CITY | ) JUDGE NORGLE |
| OF OTTAWA, ILLINOIS, a Municipal | ) |
| Corporation, | ) |
| | ) |
| Defendants. | ) MAGISTRATE SCHENKIER |
| | ) |

**REPLY MEMORANDUM OF DEFENDANTS
IN SUPPORT OF THEIR MOTION TO DISMISS** *

    While *Holmes* discussion of common law duties (Plaintiff's Response at pp. 4-5) may have relevance in the context of common law contracts and tort principles, a more appropriate consideration is the often referred to admonition of Chief Justice John Marshall that "'we must never forget that it is a *constitution* we are expounding.'"  *Daniels v. Williams*, 474 U.S. 327, 332, 106 S.Ct. 662, 665 (1986) (quoting *McCulloch v. Maryland*, 4 Wheat, (17 U.S.) 316, 407 (1899) (emphasis in original).  Therefore, regardless of what the common law rights and duties of the parties may have been, this admonition must be kept in mind.

---

* The Defendants have also filed an Amendment to Their Motion to Dismiss and Supporting Memorandum raising lack of jurisdiction.  (See Docket Entry #31, Motion and Docket Entry #32, Memorandum).

Plaintiff's counsel repeatedly refers to what he characterizes as deceitful conduct on the part of the City and the City Attorney, but this Court must again keep in mind another admonition of the Court, one restated in *Daniels*:

> "Our Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society. We have previously rejected reasoning that 'would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the states.'" (*Id.*, 474 U.S. at 332, 106 S.Ct. at 665).

Contrary to this caution, and despite the repeated statements of Plaintiff's counsel to the contrary, that is exactly what Plaintiff's counsel is trying to do, trying to constitutionalize what may have been a common law tort, as well as trying to constitutionalize what may otherwise may seem to be unfair conduct. The thrust of the Plaintiff's argument is that there is some fundamental unfairness because the City failed to follow state law and failed to pass the necessary appropriation, claiming that there was nothing that the Plaintiff did or failed to do.[1] This argument is constitutionally irrelevant. As observed by Judge Easterbrook, "[s]carcely a month goes by that the Supreme Court does not reject another permutation on the theme that, by violating state law, state employees violate the constitution." *Gordon v. Degelmann*, 259 F.3d 295, 300 (7th Cir. 1994); *accord Domka v. Portage County, Wis.*, 523 F.3d 776, 784 (7th Cir. 2008) ("failure to comply with state procedural rules does not violate the federal constitution").

While resort to these principles and admonitions, alone, compel the conclusion that the Plaintiff has not stated a claim under the due process clause, a resort to the well-established

---

[1] Nothing prevented the Plaintiff from insuring that the necessary appropriation ordinance was passed, as he is held to know the requirements of the law and the necessity that an appropriation ordinance would be enacted.

principles and the case law upon which the Defendants relied in their opening memorandum yields the same conclusion.

### I. THE PLAINTIFF DOES NOT HAVE A PROTECTED PROPERTY RIGHT WITHIN THE MEANING OF THE DUE PROCESS CLAUSE.

The Plaintiff does not dispute the proposition that the existence of a property right is a necessary predicate for both a procedural and substantive due process claim. Nor does he dispute that in order to have a property right, a person must have more than a "unilateral expectation", and the Plaintiff must establish that he has a "legitimate claim of entitlement" to the interest claimed to be protected. (Defendants' Memorandum at p. 3) (citing *Board of Regents v. Roth*). And he does not dispute that under *Roth*, property rights are determined by reference to state law.

In *Shlay* (Defendants' Memorandum at pp. 4-5), the Seventh Circuit, applying Illinois law, held that a contract of employment, which was void under Illinois law for failing to enact an appropriation ordinance, the same basis that the Plaintiff's contract of employment was found to be void, could not create a property right within the meaning of the due process clause.

> "There is no question that contracts which are in violation of law are null and void. Indeed, paragraph 8-1-7 expressly provides for such a conclusion. It is also clear that contracts which are null and void are incapable of creating property interests since such a contract cannot conceivably give rise to a legitimate expectation of continued employment." (802 F.2d at 922).

*Fittschur v. Village of Menomonee Falls*, 31 F.3d 1401, 1408 (7th Cir. 1994) (*ultra vires* representations by city officials insufficient to create a property right); *Hadley v. County of DuPage*, 715 F.2d 1238, 1242 (7th Cir. 1983) (*ultra vires* statements of county board members do not create a property right); *Grassini v. DuPage Township*, 279 Ill. App. 3d 614, 621, 665 N.E.2d

860, 865 (1996) (contract void under Illinois law cannot create a property right within the meaning of the due process clause).  The Plaintiff cites no case to the contrary nor any Illinois authority which holds that a void contract is enforceable.  He distinguishes *Shlay* stating that this case involves essentially a claim for back pay while *Shlay* involved a claim for continued employment. (Plaintiff's Response at p. 9).  But he cites no case for the proposition that he has a property right in back pay under a contract which is void under Illinois law.

Relying upon the decision of Judge Mihm in *Walters* (Plaintiff's Response at pp. 8-9), the Plaintiff argues that there is a constitutional distinction between suing to retain your job and suing for back wages and that one should have a property right in the latter even though there is no property right in the job within the meaning of the Fourteenth Amendment.  Judge Mihm's observation is dicta because the case involved a claim of continued employment rather than continuation in back pay.  Moreover, the comment was made that under Illinois law, under certain circumstances, an estoppel could possibly exist, again dicta, and in addition, it is unclear whether these observations were made by Judge Mihm in the context of addressing a pendant state claim for back wages.  More to the point, however, it is the Plaintiff's burden to establish the existence of an interest protected by the due process clause. *See Brown v. Brienen*, 722 F.2d 360 (7th Cir. 1983) (Judge Posner expressing doubt that such an interest exists when employees claim entitlement to compensatory time).

Looking to Illinois law, as mandated by *Roth*, yields the same conclusion.  The section at issue, 65 ILCS 5/8-1-7(a), expressly provides that: "[a]ny contract made, or expense otherwise incurred, in violation of the provisions of this section shall be null and void as to the municipality, <u>and no money belonging thereto shall be paid on account thereof.</u>" (emphasis added). The Plaintiff has admitted that the contract at issue is null and void, and the section at

issue "has been consistently construed to render null and void any contract made by a city without a full prior appropriation by the city council." *Nielsen-Massy Vanillas, Inc. v. City of Waukegan*, 26 Ill. App. 3d 146, 152-53, 657 N.E.2d 1201, 1206-1207 (1995). As such, the contract "is void *ab initio* and cannot be enforced by estoppel as [*sic*] ratification." (*Id.*). "[A] contract that is void *ab initio* is treated as though it never existed; neither party can choose to ratify the contract by simply waiving its right to assert the defect." *Illinois State Bar Assoc. Mut. Ins. Co. v. Coregis Ins. Co.*, 355 Ill. App. 3d 156, 164, 821 N.E.2d 706, 713 (2004).

Thus, under Illinois law, even though the contract is void and a remedy under the contract is not available, parties who contract with municipalities are unable to rely upon other theories of relief such as ratification or estoppel. And that is exactly what the Plaintiff is trying to do in this case, asking the Court to recognize a remedy outside the contract under Illinois law as the basis of his claim of a property right. Under Illinois law, no such remedy exists and therefore, he does not have a property right. To recognize a remedy outside the contract would contravene public policy clearly expressed in Section 8-1-7 that "no money belonging thereto shall be paid on account thereof." This clear articulation of public policy should operate to prevent the Plaintiff from doing an "end run" and seek to do indirectly what he could not do directly because the contract is void.

Where a contract is void on the basis that it violates public policy, "a court will not aid either party but will leave both parties where it finds them." *O'Hara v. Ahlgren, Bloomenfeld & Kempster*, 127 Ill.2d 333, 338, 537 N.E.2d 730, 737 (1989). Therefore, under Illinois law, the courts will leave the Plaintiff and the City where it finds them and should do nothing to aid either; that is, not recognize any type of remedy or relief outside of the contractual relief. And

5

where there are strong public policy concerns, such as that clearly articulated in the section at issue, the same rule applies even if the parties are not in *pari delecto*. (*Id.*).

Under state law, in view of the principles discussed above, it cannot be said that the Plaintiff has a "legitimate claim of entitlement" to being paid for services performed, and he does not have a property right. The protected interest that he asks the Court to recognize is similar to asking the Court to recognize a constitutional right that arises out of common law estoppel principles, a proposition that has been rejected by the courts. (Defendants' Memorandum at p. 6).

The Plaintiff argues that a lawyer's time, advice and services is a protectible property right (Plaintiff's Response at pp. 6-7), relying upon a 20-year old decision of the Kansas Supreme Court. (Plaintiff's Response at pp. 6-7). Clearly that decision is not binding authority and it is factually distinguishable. It dealt with a requirement that court-appointed criminal defense lawyers work for free. As such, it should be viewed more as a right to counsel case or an involuntary servitude case. Nothing forced the Plaintiff to work for the City for free.

More importantly, it is only the right to pursue an occupation that has found protection under the umbrella of the due process clause. As observed by the Seventh Circuit in *Wroblewski v. City of Washburn*, 965 F.2d 452, 455 (7th Cir. 1992):

> "The concept of liberty protected by the due process clause has long included occupational liberty – 'the liberty to follow a trade, profession or other calling.' The cases have consistently drawn a distinction, however, between occupational liberty and the right to a specific job. 'It stretches the concept too far to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another.' It is the liberty to pursue a *calling or occupation*, and not the right to a specific job, that is secured by the Fourteenth Amendment."

*Accord Draghi v. County of Cook*, 184 F.3d 689, 693 (7th Cir. 1999).

Nothing prevents the Plaintiff from practicing in his given occupation and so his claim must fail.

The Plaintiff claims that his property right does not depend upon the consulting agreement (Plaintiff's Response at p. 7), citing a case based on probate law for the proposition that when services are provided at the request of another, there is a right to be paid a reasonably value of those services.  That is a probate case and has nothing to do with the right to be compensated when an agreement is declared void and contrary to public policy and when state statute expressly provides that no money is to be paid.

The Plaintiff seeks to analogize his situation to that presented to the Court in *Logan* (Plaintiff's Response at pp. 9-10), stating that a cause of action is a species of property and seeking to characterize his claim as a claim that the City deprived him of a cause of action.  In *Logan*, an employee claimed that the termination of his employment violated the Fair Employment Practices Act and he could not assert his cause of action because of a statutory requirement that the commission convene within 120 days to take evidence, something outside the employee's control, when the commission failed to schedule a hearing.  So he had a cause of action and due to a procedural matter outside his control, he lost it.  This, in the view of the Court, was a denial of due process. The Plaintiff never had a cause of action – a cause of action that the City took away.  It was an Illinois statute that said that he never had one in the first place because his contract was void.

The Plaintiff claims that he was deprived of his day in court – but that argument misses the mark.  He had his day in court and he simply lost.  Due process does not insure victory; rather, it insures fairness of procedure and there is nothing about the procedure in state court that he claims was unfair.  And while he says that there are some striking similarities between this

case and a decision in *McKesson*, (Plaintiff's Response at p. 11), this case has nothing to do with taxes wrongfully collected and the denial of a right to refund.

The Plaintiff says that under the substantive due process clause, the government has an obligation to act "honestly and fairly and not engage in deceitful conduct", which he says, "would seem to be implicit in any concept of ordered liberty." (Plaintiff's Response at pp. 11-12). That is a gross overstatement of the rights secured by the Constitution. As noted in the Defendants' opening memorandum, the existence of a protected interest, whether it be property or liberty, is a predicate for any substantive due process claim. (Defendants' Memorandum at p.3). Absent a property right, the substantive component of the due process claim does not come into play. And to the extent that claims that some liberty interest is involved, as noted above in *Wroblewski*, the Plaintiff has not been denied his right to pursue his occupation, so liberty is not implicated. And with all due respect, the views of the late Justice Marshall, dissenting in *Roth* (Plaintiff's Response at p. 13), his view not embraced by the majority.

The Plaintiff's concession that this case would be much different if it were not for the City's deceit (Plaintiff's Response at p. 13), is telling. This case is, at best, nothing more than a common law claim for fraud that the Plaintiff seeks to dress up as a constitutional claim. State tort claims such as this are barred by the admonition of the Supreme Court in *Paul v. Davis* that Section 1983 is not "a font of tort law." Relying upon *Paul*, courts have rejected the contention that garden-variety fraud is actionable under section 1983. Griffith *v. Johnston*, 899 F.2d 1427, 1435 (5th Cir. 1980); *Rudow v. City of New York*, 822 F.2d 324, 330 (2nd Cir. 1987).

The Plaintiff also appears to try to assert a "taking" claim under the Fifth Amendment. (Plaintiff's Response at p. 16). He has no property right so the clause does not apply. And if he does have a takings claim, it is not ripe and he must resort to state court to bring that claim.

*Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City*, 473 U.S. 172, 105 S.Ct. 3108 (1985); *Gamble v. Eau Claire County*, 5 F.3d 285, 286-87 (7th Cir. 1993).

## II. THE AVAILABILITY OF JUDICIAL REMEDIES PROVIDE ALL OF THE PROCESS WHICH IS DUE.

All that the due process clause requires when property rights are involved is that there be adequate judicial remedies. The Plaintiff equates the existence of a remedy with a right to relief – a victory. But the Constitution only requires that procedures be available. Could he seriously contend that if the state proved, in *Parratt*, that it had not negligently lost the prisoner's hobby kit that the Plaintiff would have then been able to bring his constitutional claim! The Plaintiff had a fair hearing in state court and lost. That is not a denial of due process.

He claims that since he has a claim against the City, *a fortiori*, *Parratt* does not apply because the deprivation is not "random and unauthorized." (Plaintiff's Response at p. 16). But whether the actions were random and unauthorized must be viewed from the prospective of the "state". The *Parratt-Hudson* doctrine has been held to apply even where the deprivation is the result of action taken by a county board, and even though taken by the county board, it is still viewed as being random and unauthorized. *Germano v. Winnebago County*, 403 F.3d 926, 928 (7th Cir. 2005).

The Plaintiff also claims, citing an opinion of the Eleventh Circuit, that where a substantive due process violation exists, *Parratt* does not apply. (Plaintiff's Response at p. 17). Without regard to whether his interpretation of the case is correct, that is not the law in the Seventh Circuit. "[W]hen a substantive-due-process challenge involves only the deprivation of a property interest, a plaintiff must show 'either the inadequacy of state law remedies or an independent constitutional violation' before the court will even engage in this deferential rational-basis review." *Lee v. City of Chicago*, 330 F.3d 456, 467 (7th Cir. 2003). And as noted

9

in the Defendants' opening memorandum, the existence of a property right is a predicate for the substantive due process claim as well. (Defendants' Memorandum at p. 3).

### III.  UNDER THE "TRANSACTIONAL TEST" THIS ACTION ARISES FROM THE SAME SET OF OPERATIVE FACTS AS THE STATE COURT ACTION.

Plaintiff does not dispute the legal principles of *res judicata*, nor the factors that are taken into consideration for determining if the same transaction is involved.  See Defendants' Memorandum of Law in Support of Their Motion to Dismiss. The only dispute is whether the same transaction was involved in both lawsuits.  Although Plaintiff acknowledges that Illinois courts apply the "transaction test" to determine if "a subsequent action arises from the same set of operative facts as the original action," Plaintiff relies, and without saying so, utilizes the "same evidence" test which was abandoned in *River Park Inc. v. City of Highland Park*, 184 Ill.2d. 290, 309 (1998).  Under the "same evidence" test, a second suit was barred "if the evidence needed to sustain the second suit would have sustained the first, or if the same facts were essential to maintain both actions." *River Park Inc.*, 184 Ill.2d. at 307.  As Illinois has abandoned this test, it does not matter that this action may have facts, time periods, issues and obligations that were not relevant to the plaintiff's state court action.  Under the transactional test, two claims are one for purposes of *res judicata* if they are based on the same, or nearly the same, factual allegations. *Brzostowski v. Laidlaw Waste Systems, Inc.*, 49 F.3d 337, 339 (7th Cir. 1995).  In other words, the issue before the Court becomes whether the same transaction was the catalyst for both cases.  A review of the two complaints reveals that the state claim for breach of contract and the present Section 1983 cause of action involve the same transaction.

In both paragraph 7 of his state court Complaint and in paragraph 66 of his federal court Complaint, the Plaintiff alleged that "in Section 3(a) of the Consulting Agreement the City

10

agreed to pay Landreth a monthly retainer of $5000.00 and to reimburse his expenses." In both paragraph 8 of his state court Complaint and in paragraph 69 of his federal court Complaint, Plaintiff claimed that "in section 3(d) of the Consulting Agreement the City agreed to pay incentive compensation to Landreth based on the "project cost" of new industrial developments occurring within Ottawa during the term or any extension of the Consulting Agreement."  In paragraph 10 of his state court Complaint and in paragraph 76 of his federal court Complaint, Plaintiff alleged he became entitled to incentive compensation under Section 3(d) of the Consulting Agreement attributable to the "PetsMart Fee."  In paragraph 12 of his state court Complaint and in paragraph 81 of his federal court Complaint, Plaintiff stated the City continued to pay him his monthly retainer.  In paragraph 13 of his state court Complaint and in paragraph 82 of his federal court Complaint, Plaintiff alleged the City presented him with a draft of a proposed new consulting agreement.  In paragraph 14 of his state court complaint and in paragraph 83 of his federal court Complaint, Plaintiff argued that the proposed new consulting agreement substantially changed the terms of the Consulting Agreement.  In paragraph 15 of his state court complaint and in paragraph 84 of his federal court complaint, Plaintiff alleged that he attempted to negotiate the terms of a new consulting agreement with the City, but the City refused to negotiate with Landreth in good faith.  In paragraph 16 of his state court complaint and in paragraph 85 of his federal court complaint, Plaintiff alleged he refused to accede to the City's demand that he relinquish the PetsMart Compensation.

     It is clear that Plaintiff's two causes of actions are based upon substantially the same claims.  The overlap of identical allegations in each case is significant and shows that the transactional test is satisfied because the instant action arises from the same nucleus of operative facts as the previously ruled on state court action.  Despite Plaintiff's attempt to disguise the

focus of this present action on the "City's deceitful conduct," the above comparison of the allegations in each complaint demonstrate that this lawsuit is centered on the Consulting Agreement. It is disingenuous to say that the Consulting Agreement is not at issue in this case because this contract is the basis for all of the plaintiff's claims in this action as well as the state court action.

There is no point in distinguishing the cases that Plaintiff cited to in his response because they are factually different and the application of the "transaction test" is fact sensitive. Absent a "case on all fours," there is no point in discussing those cases in detail.

Plaintiff says it all when he says "if the circuit court had found that the Consulting Agreement was valid, the breach of contract action would have proceeded and there never would have been this federal action." The crux of this statement is that there would have been no need for the present action, but as the state court dismissed the plaintiff's case, he wanted another "another bite at the apple." As Plaintiff had his day in court in the prior state court action; his claim should be precluded and this action should be dismissed.

### IV. PLAINTIFF FAILED TO STATE A CAUSE OF ACTION FOR FRAUD AS HE HAD A DUTY TO INQUIRE INTO THE CONTRACTUAL LIMITS OF THE CITY.

As Plaintiff acknowledged, he is presumed to know the law and to know that Section 8-1-7 requires a prior appropriation; therefore he cannot rely on the representations of any government official. Plaintiff should have checked the law and ensured that the city approved an appropriation for his contract. An individual that deals with a municipality is held to know the law, and as unfortunate as that is, it is one of the hazards of dealing with a municipality. This is the public policy in Illinois, and in the majority of the states. See *Galey v. City of Chicago*, 18 Ill. App. 3d 248, 254, 309 N.E.2d 653, 658 (1974).

Although the Consulting Agreement states that it is binding and not violative of any existing provision of the law, Plaintiff cannot rely on the contract because it is void. Furthermore, Plaintiff "cannot have his cake and eat it too" because Section 15 of the Consulting Agreement states that "each party waives any claim against said law firm or its individual attorneys because of any conflict of interest or any apparent conflict of interest resulting from said joint representation." The Plaintiff is held to know whether his contract complies with the city ordinances and is authorized by controlling law; therefore, this action should be dismissed

### V. PLAINTIFF'S CLAIMS ARE BARRED BY SECTION 8-101 OF THE TORT IMMUNITY ACT.

There are cases where it is "painfully obvious" prior to any adverse ruling against the plaintiff that he may have a cause of action, and this is one of those cases. *Warnock v. Karm Winand & Patterson*, 376 Ill. App. 3d 364, 876 N.E.2d 8 (2007). Plaintiff's alleged cause of action accrued well before the state court trial judge's ruling on February 28, 2008, otherwise the state court would not have adjudicated the case on the merits. If the Plaintiff did not have a cause of action prior to the above date, then the state court would have dismissed his case as not ripe, for lack of any ascertainable injury. Plaintiff asserts that he only realized he had a cause of action when he received the adverse ruling on February 28, 2008, yet he alleges that the City on June 1, 2005, failed to pay him the disputed "PetSmart Fee." As the Plaintiff filed this suit more than a year after June 1, 2005, this case is barred by the statute of limitations and should be dismissed.

WHEREFORE, the Defendants, KEITH R. LEIGH, POOL, LEIGH & KOPKO, P.C. (formerly known as POOL & LEIGH, P.C.), an Illinois Professional Corporation, ROBERT M. ESCHBACH, and THE CITY OF OTTAWA, ILLINOIS, a Municipal Corporation, respectfully request that this cause of action be dismissed in accordance with the foregoing.

Respectfully submitted by,

s/ William W. Kurnik
WILLIAM W. KURNIK, Attorney I.D. #01550632
One of the attorneys for the Defendants
KEITH R. LEIGH, POOL, LEIGH & KOPKO, P.C.
(formerly known as POOL & LEIGH, P.C.), an
Illinois Professional Corporation, ROBERT M.
ESCHBACH, and THE CITY OF OTTAWA,
ILLINOIS, a Municipal Corporation

## CERTIFICATE OF SERVICE

The undersigned, one of the attorneys of record herein, hereby certifies that on August 15, 2008, the foregoing **REPLY MEMORANDUM OF DEFENDANTS IN SUPPORT OF THEIR MOTION TO DISMISS** was electronically filed with the Clerk of the U.S. District Court using the CM/ECF System, which will send notification of such filing to the following: Richard J. Berry at rberry@mdbok.com; Misha Desai at mdesai@khkklaw.com; and William W. Kurnik at bkurnik@khkklaw.com.

s/ William W. Kurnik
WILLIAM W. KURNIK, Attorney I.D. #01550632
KNIGHT, HOPPE, KURNIK & KNIGHT, LTD.
2860 River Road, Suite 400
Des Plaines, IL 60018-6009
Telephone: 847-298-8000
Facsimile: 847-298-8014
E-Mail: bkurnik@khkklaw.com

5838 MTD, Reply 08-08-13